Ranney, J.
We have only to consider whether the evidence given by the plaintiffs, in any degree tended to prove all the facts necessary to support the action. If it did, the court below erred in taking it from the jury, and ordering a nonsuit. That they *414 were entitled to recover of some one, a compensation for the injuries done to their property, is most unquestionable; and that the defendants are liable, if, under the same circumstances, a private individual would be, is now too well settled, and has been too often affirmed by this court, to require authorities to be cited, or reasons to be assigned.
*The plaintiffs and defendants were adjoining proprietors of real estate. While the business of blasting rock was being prosecuted, upon the defendant’s premises, for the purpose of constructing their road, a large quantity of fragments was thrown against a dwelling-house of the plaintiffs, by which it was injured. It appeared that this blasting was done by certain contractors, who had agreed with the company to construct this part of their road.
The plaintiffs insist, that the defendants are liable for the wrongful acts of these contractors, upon the principle respondeat superior, if not from the general obligations arising from the relation they •sustained to each other, because of the power of control reserved to the company by the terms of the agreement.
On the other hand, it is claimed that this principle has no application to the relation existing between an employer and independent contractor; and that nothing contained in this agreement •shows the relation to have been anything else.
Counsel, with much industry aud research, have presented us with the numerous cases, decided in the English and American •courts, bearing upon this subject. If the case depended upon the proper application of this principle, it might be attended with considerable difficulty. The late cases in both countries have made •it very plain, that there can be no liability where the relation of master and servant, or principal and agent, does not exist; and, consequently, none where the relation is that of employer and contractor. In the one ease, the principal selects the servant or agent with a view to his skill and care, and not only retains the -control over all his operations, but, also, has the power to dismiss ;him at any time for misconduct. In the other, the contractor assumes this position, leaving the employer no control over the work, or the persons by whom it is executed, but simply the right ■to require the thing produced, or the result attained, to be such as ■the contract has provided for. But, although as between the par *415, 416 ties, the relation may be that of ^employer and contractor; still, if the employer retains the power of superintending the work, and directing it to be done in such manner as he sees fit, the decided weight of authority is, that it becomes his duty to see it done in a careful and skillful manner; and if he fails in this, he fails to perform his duty to third persons, and is liable for the injuries they may sustain. In general, however, it is certainly true, that the employer is not liable for the negligent or unskillful conduct of the contractor, or any one employed'by him, while executing an independent employment.
But after all this the question still remains, when does this maxim, and the limitation to its operation, cease to furnish the governing principle? A principle as old as civilization itself, and no less of morals than of law, requires of every one to so use his own property as not to injure others. This devolves upon every owner of real estate the affirmative duty of preventing it from becoming a nuisance to adjoining proprietors. Whether he can divest himself of this obligation consistently with the full operation of this important principle, while he retains the possession and control of the property, so as to escape liability when he suffers it to be occupied by a contractor who erects a nuisance upon it to the injury of others, is a question that I am very far from being prepared to answer in the affirmative. And so are the English courts. In most of the late cases decided in that country, questioning, and finally overruling to considerable extent, the early case of Bush v. Steinman, 1 Bos. & Pul. 404, followed by Sly v. Edgely, 6 Esp. 6, this distinction is alluded to, and most particularly and pointedly, by Park B. in Knight v. Fox, 5 Exch. 721; and by Rolfe B. in Reedie v. The London and Northwestern Railway Co., 4 Exch. 256; where he says, the liability of the owner in such case “must be founded on the principle that he has not taken due care to prevent the doing of acts which it was his duty to prevent, whether done by servants or others. If, for instance, a person occupying a house or a field should permit another to carry on there a noxious trade so as to *be a nuisance to the neighbors, it may be that he would be responsible, though the acts complained of were neither his acts nor those of his servants. He would have violated the rule of law, sic utere tuo ut alienum non Icedas.”
But it is quite unnecessary to pursue this view of the subject further, as it is evident that the in the *417 maxim, respondeat superior, either in its larger or more restricted' sense, can have no application to the present case.
Before a case can be made calling for an application of that principle, it must appear, not only that the relation of master and servant existed, but that the servant, without the assent of the master, has-done some act, or omitted some duty, while executing the lawful commands of the master, to the injury of a third person. In such case, public policy and the safety of others require the master to warrant the fidelity and good conduct of the servant, and, although faultless himself, make him liable for the unlawful conduct of ther servant. But when the servant has done only that which the master commanded or permitted, the latter is chargeable as a joint participator in the wrong, and made liable for his own unlawful conduct, in the same manner as though no such relation had existed.. As was said by Erie, J., in Ellis v. The Sheffield Gas Consumers’ Co., 2 El. & Bl. 767, where the' relation was that of employer and contractor for the performance of illegal stipulations: “ The act of the person who is here called the contractor was the act done by him under the special directions of the defendants; and that appears to me to distinguish this case from those in which the employer was held not liable for the act done by the contractor, not in accordance with his contract.” A careful attention to the evidence given will show this case to have been of that character.
By the terms of the agreement between the company and the contractors, amongst other work to be performed by the latter, was-that of removing solid rock at a stipulated price per cubic yard. By the rules and specifications made a part of the contract, *« solid rock” is defined to be “all rock found in masses containing more than one cubic yard, and which must be removed by blasting.” And the bill of exceptions informs us that, in blasting “ for the purpose of removing large masses of solid rock, containing more than one cubic yard each,” fragments were thrown against the plaintiff's-house, causing the injuries complained of.
No proof was given that the work was not prosecuted with care and prudence, or that the injury was not the unavoidable consequence of blasting in that particular locality. Now, 'it seems very clear, that the contractors did nothing that the defendants had not authorized to be done. But the defendants had no right to use their own lands, or authorize others to use them, so as to interfere with-the undisturbed and lawful of lands- *418 As said by the court in Hay v. The Cohoes Company, 2 Com. 159 : “ A man may prosecute such business as he chooses upon his premises, but he can not erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of a lawful trade. He may ■excavate a canal, but he can not cast the dirt pr stones upon the land of his neighbor, either by human agency or the force of gun-powder. If he can not construct the work without the adojotion of such means, he must abandon that mode of using his property, or be held responsible for all damages resulting therefrom. He will not be permitted to accomplish a legal object in an unlawful manner.”
We do not construe the agreement as absolutely binding the contractors to remove the rock in this particular manner. ^ They might, •undoubtedly, have adopted other and more exjDensive modes of doing it, without affording the defendants any cause of complaint. But nothing of that kind was contemplated. The defendants put •'them in possession, with the right to remove rock, wherever found, in the manner mentioned in the contract; and having enjoyed the benefits of this cheaper mode of doing the work, they can not escape the responsibilities attending it. If *they reserve no power to prevent injury, where blasting could not be safely employed, they were clearly in fault in giving so unrestricted a license. If they had the power, it is almost equally clear they should have •exerted it.
Being of the opinion that the evidence, given upon the trial, tended to prove the concurrence of the defendants in all the acts performed by the contractors; and believing the whole law of the ■case to resolve itself into the elementary proposition that whoever .aids, assists, or procures another to commit a trespass (no matter with what motive, or whether intended or not), is liable as a principal to compensate for the injury done, we are brought to the ■conclusion, that the court of common pleas erred in nonsuiting the plaintiffs, and for that cause the judgment is reversed, and the case ¡remanded for further proceedings.
Thurman, C. J., dissented.